IN THE MATTER OF THE GUARDIANSHIP OF

CATHERINE DENISE CHEWIWI

Decided on January 17, 1977

Michael V. Stuhff, Navajo Legal Aid and Defender Services, Window Rock, Arizona, for Appellant

Louise Denetsosie, Window Rock, Arizona, for Appellee

Before KIRK, Chief Justice, BLUEHOUSE and JOHN, Associate Justices

KIRK, Chief Justice

This an appeal from an order of the Trial Court of the Judicial District of Window Rock, awarding guardianship of the child, Catherine Denise Chewiwi, to Jose Marceline Chewiwi.

Having heard oral arguments on behalf of both parties on January 11, 1977, this Court finds the following facts:

1.     The child, Catherine Chewiwi, is the daughter of Juan Antonio Chewiwi, an enrolled full-blooded Isleta Pubelo Indian, and Mary Ann Chewiwi, an enrolled full-blooded Navajo Indian.

2. The parents of the child enrolled her as a member of the Isleta Pueblo, to the exclusion of enrollment in the Navajo Nation ( 1 N.T.C. § 103).

3.     The parents died in an automobile accident on or about April 3, 1976.

4.     The Tribal Court of the Pueblo of Isleta in April, 1976, appointed Jose Marceline Chewiwi as the child's guardian.

5. The child is five years old as of the date of this decision, her birthday being August 7, 1971.

6. The child was brought within the territorial jurisdiction of the Courts of the Navajo Nation by Katherine and Cecil Begay, maternal aunt and uncle of the child, during July, 1976.

7. Pursuant to a petition filed on July 22, 1976, by counsel for the Begays with the Trial Court for the Judicial District of Window Rock, a hearing was held and an order issued on that same date granting the Begays temporary custody.

8. Pursuant to a motion filed by counsel for Jose Chewiwi to show cause why the above-named petition should not be dismissed, a hearing was held by the Window Rock Trial Court on September 24, 1976, and on October 8, 1976, an order issued vacating the temporary custody order and restoring guardianship to Jose Chewiwi.

9. The child then returned to the Isleta Pueblo, where she remains as of this date.

The issues presented to the Court of Appeals are:

1. Whether the Trial Court erred in not appointing an attorney to represent the child,

2. Whether the Trial Court had jurisdiction to determine the guardianship of the child,

3. Whether the Isleta Court's decision was res judicata, binding upon the Navajo courts,

4. Whether the concept of "full faith and credit" is applicable to the relationship between courts of different Indian tribes.

First, the contention that, in a custody proceeding, a child should be independently represented by counsel is without merit. Since it is obvious that such proceedings present to any court only two options, we will discuss representation by counsel in terms of the interests represented by and inherent in such options.

The first choice that a court has in determining custody is to award the child to one of the parties petitioning for such custody.

As was the case in this proceeding, such parties are usually represented by counsel. If the court is going to determine that one of the competing parties is to be awarded custody of the child, then the interests of the child are, by definition, represented by the counsel for such parties.

If, on the other hand, the court were to make a determination that none of the contesting parties is entitled to guardianship, then again, by definition of the parameters of such cases, the child's interests have been represented by the court, acting as the ultimate guardian of the child.

It is the fact of this case that neither party offered the court any alternative between custody for the Begays or Mr. Chewiwi. Nor did the court on its own find any suitable third alternative. Therefore, logically, appellants are bound to the conclusion that the child's interests were, in fact, represented as fully as they needed to be.

While it is certainly not a determining factor in our conclusion, as to the issue, we must point out that counsel for the appellants did not advise the court of any practicable means for the payment of such independent counsel.

Finally, petitioners' contention that the failure of the court to appoint an attorney for the child was a violation of the Indian Civil Rights Act (25 U.S.C. 1302) in that the child was deprived of her liberty without due process is patently absurd.

Due process was had in that a hearing, with the only parties seeking custody both represented by counsel, was held and a determination was made by the Navajo court that a court having proper jurisdiction had made a determination on the merits. Furthermore, the Indian Civil Rights Act does not even require that the court appoint an attorney in criminal cases, let alone in civil cases. The Court of Appeals is unaware of any decision of any appellate court that the concept of due process requires the appointment, in a custody case, of independent counsel for the child.

Second, it is our determination that the courts of the Navajo Nation do have the authority to determine the custody of any Indian minor properly within the jurisdiction of the Navajo judicial system pursuant to Title 9 of the Navajo Tribal Code. The key word is "properly". Obviously, jurisdiction procured by fraud or asserted over a minor who is not actually within the Navajo Nation would be defective.

The Court of Appeals realizes that consent was given by the Isleta-appointed guardian to the appellants, the Begays, to bring Catherine Chewiwi to a place within Navajo territory. However, it is clear that this consent was intended only for the purpose of a limited family visit. This presence within the Navajo Nation may have given rise to personal jurisdiction but the real question for this Court is the one of whether Navajo courts can or should assert subject matter jurisdiction over the status of such minors.

The answer to this question lies only in a case-by-case

analysis of the contacts of the child with the Navajo Nation and any other Indian tribe. In this case, the child's parents made a conscious choice to live at the Isleta Pueblo and to enroll their child there, rather then on the rolls of the Navajo Nation. The child spent most of her time at the Isleta Pueblo. The mere fact that the child visited relatives within the Navajo Nation cannot by itself confer on a Navajo court the subject matter jurisdiction to determine this child's status. To rule otherwise would open the door to confused litigation.

Third, the issue of res judicata was not properly raised in this case. The decision of Evens v. Keller, 6. P.2d 200, cited as supporting authority in appellee's brief does not stand for the proposition that a court judgment determining a child's status in a custody proceeding is binding on anyone except the parties to such proceeding. The decision does not even purport to be binding on the parties to such a suit if the state of facts existing at the time of the decision have changed. Since appellants were not a party to the proceeding in the Isleta court and since they are alleging in the suit before the Navajo courts a change in the situation existing at the time of the Isleta decision, the rule of res judicata is inapplicable in this case.

Fourth, we must deal with the concept of "full faith and credit", which both counsel mentioned in their briefs. The Navajo Nation and the Isleta Pueblo stand beyond the bounds of this rule of law, such as it presently exists and governs the constitutional relationships of the states of the United States.

It should not be necessary for this court to remind anyone that Indian nations and tribes were not signatories to the United States Constitution and were not intended to be included within the scope of the mandate of Article IV, Section 1. Nor does Title 28, United States Code, Section 1738, which was written to effectuate the mandate of Article IV, Section 1, provide a clear guide to the relationship between Indian courts.

The case of Jim v. C.I.T., 533 P.2d 751, decided by the Supreme Court of New Mexico in 1975, was cited by both parties as explaining the effect of 28 U.S.C. 1738 on Indian courts. While the esteemed Supreme Court of New Mexico did make reference to 28 U.S.C. 1738 in its opinion, a careful reading of that decision will show that the real issue presented by the facts of that case related to the conflicts of law doctrine. The Supreme Court determined that, under New Mexico's Uniform Commerical Code, parties to a contract may determine which law, given the applicability of more than one, shall govern.

The dissent of Justice Oman, in our opinion, correctly stated that the appellant's claim really was that Navajo law was applicable because the repossession occurred on Navajo territory. The fact is that no judicial proceeding had ever occurred in the Navajo courts. Therefore, 28 U.S.C. 1738 could not have been applicable.

It is our opinion that 28 U.S.C. 1738 does not purport to govern the relationship between Indian courts. The constitutonal provision upon which it is based did not envision Indian courts being in

existence nor did the act itself. The status of the decisions of Indian courts is generally determined not in relation to "full faith and credit", but to the concept of the exclusive jurisdiction of each Indian court over certain matters, sanctioned by federal law and United States Supreme Court decisions.

We think, rather, that the issue presented when the decision of any state or Indian court is presented to the courts of the Navajo Nation for enforcement is one of comity. Navajo court will honor and enforce foreign judgments upon consideration of the right of the foreign court to issue the judgment, of the propriety of the proceeding, and of any relevant public policy of the Navajo Nation.

In this case, the Isleta court clearly had complete jurisdiction to render its decision. This is not questioned by the appellants. The Isleta court's proceedings were properly conducted.

Appellants' claim that their rights were prejudiced because of the fact the they were not notified of the Isleta proceedings must be examined in light of accepted judicial practice and due process standards of notice. The Isleta court notified all parties within its jurisdiction of the hearing concerning the custody of the child, who was and is, a resident of that pueblo. We are unaware of any court decision that holds that the concept of due process requires notification of relatives beyond the territorial jurisdiction of the court holding the custody hearing.

While this might be good policy, it has obvious limits, which need not be discussed here. To hold that such notification is an element of due process would burden our courts beyond belief and we therefore refuse to hold any other court to such a standard.

Finally, we can find no relevant public policy of the Navajo Nation which upholding the decision of the Isleta court would violate.

The decision of the Trial Court for the Judicial District of Window Rock is hereby AFFIRMED and the stay of execution issued on the 9th day of November, 1976, is hereby VACATED.

BLUEHOUSE, Associate Justice, and JOHN, Associate Justice, concur.